No. 29,277.

A. DIEBOLT, *Appellant,* v. F. F. FRITCHEN, M. MAY, M. LUTGEN, C. F. REINKING and E. D. HOBBIE, *Appellees.*

(287 Pac. 605.)

Opinion filed May 3, 1930.

C. L. Kagey and L. M. Kagey, both of Beloit, for the appellant.

N. C. Else, of Osborne, A. E. Crane, A. Harry Crane and B. F. Messick, all of Topeka, for the appellees.

The opinion of the court was delivered by

HARVEY, J.:   This is an appeal by plaintiff from a judgment sustaining a demurrer to his amended petition. The action is against F. F. Fritchen, M. May, M. Lutgen, C. F. Reinking and E. D. Hobbie as individuals. These persons were formerly the directors of the Home State Bank of Tipton, Kan., which bank failed in November, 1928. The legal question argued by appellant is the statute of limitations.

In the amended petition plaintiff alleged, in substance, that on October 3, 1924, he purchased for $5,500 thirty-five shares of stock in the Home State Bank of Tipton from E. C. Mueller, its cashier, with whom he had a written agreement, a copy of which is attached to the petition, by which Mueller agreed and guaranteed that the signatures on all notes in the bank were genuine, and that the amounts due thereon were correct, and that certificates of deposit, as shown by the ledger, were correct, and Mueller agreed to pay

any loss sustained by plaintiff if those things were not true; also any loss plaintiff might sustain by reason of an item of $2,203.29 shown by the books of the bank to be on deposit in the Union National Bank of Beloit; also any loss from real estate carried at $10,400, and from certain bonds carried as assets, and from overdrafts shown by the bank books, and from any liability of the bank not shown on its books, and from loss on notes held by the bank. It was further alleged that on October 4, 1924, the directors of the bank, at their meeting, checked all accounts of the bank and found them to be correct; also passed on and approved all notes, "guaranteeing same to A. Diebolt under his purchase agreement with C. C. Mueller." At that meeting of the directors a five per cent dividend was declared. Mueller resigned as cashier and plaintiff was elected cashier at a salary of $200 per month. Plaintiff further alleged that the notes in the bank were not worth their face, that the real property was carried at too high a value, and that instead of the Union National Bank of Beloit owing the Home State Bank of Tipton $2,203.29 the receiver of the Beloit bank had a claim against the Tipton bank of approximately $50,000 because of notes sold to the Beloit bank and guaranteed by the Tipton bank, which claim was finally settled by the Home State Bank of Tipton paying to the receiver of the Union National Bank of Beloit $23,000, and that at a meeting of the directors of the Home State Bank of Tipton on March 10, 1925, the directors disapproved and charged off notes of the face value of $26,518.20 and revalued the real estate owned, depreciating it $3,400; that among the notes so charged were notes of the directors aggregating $7,500 payable to the bank and signed by these defendants, who were the directors of the bank; that while these notes were charged off the directors represented to plaintiff that they would be paid if the amount of them ever became necessary to the maintenance of the bank. Plaintiff further alleged that instead of the bank being solvent at the time he purchased stock therein and became the cashier thereof it was, in fact, insolvent; that plaintiff learned of that condition within a few months, but because his money was invested in the bank and ". . . on account of the urgent requests of the defendants and the oral agreements made with him at nearly every meeting of the directors, and at nearly every opportunity that he had to talk with them about the matter, that they would stand behind said bank and would hon-

estly and faithfully meet any requirements in the way of cash or securities that might be needed at any time to keep the said bank going and to meet its obligations," he stayed with the bank for more than four years as its cashier, and during that time so managed the business of the bank as to reduce its liabilities $40,000; that on November 9, 1928, notwithstanding a loss of about $5,400 caused by the mismanagement of an assistant cashier, the bank would have been solvent had the directors of the bank paid their notes to the bank which had previously been charged off, and which, with interest, at that time amounted to about $12,500. Plaintiff further alleged that while he was cashier, in order to keep the bank going, he purchased thirty-two additional shares of stock, for which he paid $3,000, but the time and specific circumstances under which that purchase was made are not alleged. Plaintiff further alleged that because of the failure of defendants to pay their notes at the bank, which were in the bank at the time he purchased it and later charged off, the bank was forced to close in November, 1928, resulting in the loss of $8,500, which he had invested in the bank, subjected him to a liability of $6,700 on his stock, and damaged his good name and reputation as a banker, all in the sum of $40,200, for which he prayed judgment.

The petition does not state a cause of action on plaintiff's contract with Mueller, for this action is not brought against Mueller. Neither does the petition state a cause of action against the Home State Bank of Tipton by reason of the action of the board of directors of that bank on October 4, 1924, or any subsequent action of such board of directors, for neither the Home State Bank of Tipton nor its directors are made parties defendant. If we view the petition as stating a cause of action for deceit on the part of Mueller and of the directors of the bank in their representations made to the plaintiff on October 3 and 4, 1924, it would seem that the action should be against Mueller or the bank for such deceit, and neither of them is a defendant here. But if we treat the deceit as being that of the individual defendants here, who were directors of the bank, rather than their deceit as such directors, then the petition discloses that this deceit was discovered within a few months and as early as March 10, 1925, and the two-year statute of limitations would apply (R. S. 60-306, clause 3). Appellant apparently takes still another view, namely, that there were repeated and con-

tinued promises of the board of directors of the bank at practically every meeting, and of the individual members of the board of directors at other times, that the bank would collect the notes signed by its directors, and charged off March 10, 1925, whenever the money represented by them was needed to sustain the bank. Analyzing that contention, the promises made by the board of directors at their meeting were promises of the bank, if enforceable promises of anyone, rather than the individual promises of the members of the board, and since the bank is not a party defendant here no cause of action is stated on that. This leaves from all of the allegations of the petition nothing but individual promises made from time to time by the defendants, or some of them, who were in fact members of the board of directors of the bank. But it should be noted that the notes of the directors never were payable to the plaintiff—they were made payable to the bank—and it is difficult to see from the allegations of the petition that any individual promises were made by the defendants to plaintiff. If such promises were made the petition alleges no consideration for them, and for that reason they would be insufficient to support an action. Taken as a whole, we see no ground on which the petition states a cause of action in favor of plaintiff and against the defendants.

The judgment of the court below is affirmed.